Case 7:16-cv-00411 Document 69 Filed in TXSD on 11/02/18 Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
November 02, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-411 |
| | § § | |
| HARLINGEN CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, *et al*, | § § § § § | |
| Defendants. | § | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT THREE OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Now before the Court are Defendant Harlingen Consolidated Independent School District's ("HCISD") Motion for Summary Judgment (Dkt. No. 54) and Travelers Casualty & Surety Company of America's ("Travelers") Motion for Summary Judgment (Dkt. No. 56). After considering the Motions, the responsive pleadings, (Dkt. Nos. 54, 55, 56, 60, 61, 62), and the applicable law, the Court holds that HCISD's Motion for Summary Judgment should be denied (Dkt. No. 54) and Travelers' Motion for Summary Judgment should be granted (Dkt. No. 56) for the reasons stated herein.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Travelers sold statutory performance and payment bonds to HCISD's prime contractor Texas Descon, L.P. ("Descon") in connection with Descon's contract to construct the Ninth Grade Academy (the "Project"). (Dkt. No. 54, p. 4). The performance bond required Travelers to remedy Descon's unperformed obligations to HCISD and the payment bond authorized claims against Travelers by any bond beneficiary in a direct contractual relationship with Descon. *Id.*

Both bonds listed Descon as the principal and HCISD as the obligee. *Id.*

The Project's architect issued a Certificate of Substantial Completion on or about August 26, 2013. *Id.* Although "substantially complete," HCISD contends that the cost estimate of incomplete or defective work on the Project was $2,382,899.00, the punchlist work was not complete, and HCISD had discovered serious defects with the Project. *Id.* at 5. Descon continued to perform punchlist work on the Project and, based on Descon's representations of work completed, HCISD released $1,238,493.00 in retainage funds to Descon. (Dkt. No. 55, p. 4).

It is undisputed that HCISD did not obtain Travelers' consent before releasing retainage. (Dkt. No. 54, p. 7). Travelers, however, asserts that HCISD's failure to obtain consent before releasing retainage materially breached the bonded contract. (Dkt. No. 55, p. 4). Travelers asserts that HCISD's decision to release retainage funds without its consent resulted in numerous claims and a lawsuit against them on the payment bond by several subcontractors and material suppliers who allege that they are owed retainage for work performed on the Project. *Id.* Travelers alleges that the claims against it amount to $272,730.81, which exceeds the remaining $100,000.00 in retainage held by HCISD. *Id.*

In Count Three of its First Amended Complaint, Travelers seeks a declaration that it is absolved of liability under the payment bond because HCISD materially breached the bonded contract by releasing retainage without Travelers' consent. (Dkt. No. 10, ¶ VI.). Travelers moved for summary judgment on this Count arguing that HCISD breached Section 9.8.5 of the bonded contract. (Dkt. No. 25). This Court, however, denied summary judgment and held that Section 9.8.5 did not explicitly require HCISD to obtain Travelers' consent before releasing retainage. (Dkt. No. 48, p. 11). The Court reasoned that the language of Section 9.8.5 was too broad to create an obligation to Travelers and also reasoned that Travelers' breach of contract

claim failed because Travelers was neither a party to the contract nor a third-party beneficiary between HCISD and Descon.

HCISD now moves for summary judgment on the same count, asking the Court to deny Travelers' breach of contract claim on the payment bond as a matter of law. (Dkt. No. 54, p. 3). Travelers filed a Response to HCISD's Motion for Summary Judgment and filed a Cross-Motion for Summary Judgment, nearly identical to its Response, asking the Court to declare HCISD's liability on payment bond claims as a matter of law for failure to obtain Travelers' consent before releasing retainage pursuant to Section 9.10.3[1] of the bonded contract. (Dkt. No. 56). The Court considers the cross-motions below.

II. RULES OF LAW

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a), (c).

Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for

---

[1] "Travelers acknowledges it previously directed the Court's attention to § 9.8.5 as grounds for the relief it seeks, but in light of the Court's Order entered October 30, 2017, Travelers respectfully submits that examination of the contract as a whole, and § 9.10.3, is appropriate to adjudicate the parties' continuing dispute." (Dkt. No. 55, p. 10).

3 / 13

trial. *Celotex*, 477 U.S. at 324; FED. R. CIV. P. 56(c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006). However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

### III. ANALYSIS

The parties have individually asked the Court to grant them summary judgment as to Count Three of Plaintiff Travelers' First Amended Complaint. (Dkt. Nos. 54, 56). Travelers alleges that "HCISD's premature release of retainage also holds HCISD liable to Travelers for losses it may sustain on Payment Bond claims." (Dkt. No. 10, ¶ 28). Travelers seeks relief in the form of "a declaration that HCISD's unauthorized payment of retainage holds it liable for any losses Travelers may sustain under the Payment Bond." *Id.* at ¶ 31. On the other hand, "HCISD contends that the Construction Contract does not prohibit payment of retainage and that Travelers was not in privity of contract nor a third-party beneficiary to make a claim against HCISD under the Construction Contract." (Dkt. No. 54, p. 7).

Count Three alleges a breach of contract, a cause of action which demands a thorough review of each party's individual motions for summary judgment to determine whether, if viewed in the light most favorable to the moving party, a genuine issue of material fact remains.

This review is more easily accomplished by topic rather than by addressing one party's motion and arguments, followed by the other's. At issue are:

(1) whether a surety may bring a cause of action for breach of a contract that it bonded where the surety is not in direct privity of contract with the owner-district;

(2) whether the owner-district breached the General Conditions Contract when it released retainage funds without first acquiring written consent from the surety;

(3) whether an owner-district has waived governmental immunity by entering into a contract for a public project.

### A. Breach of Contract

#### i. Plaintiff Travelers has standing to bring this action against Defendant HCISD.

Defendant HCISD contends that Plaintiff Travelers does not have standing to bring a suit against it for breach of contract because the two parties are not in direct privity. *See generally* (Dkt. Nos. 54, 61). However, HCISD neglects to address the litany of cases which support the right of a surety who issued a performance bond to bring a suit against the involved governmental entities.[2] While the general rule is that a party must be in privity of contract to

---

[2] *Pac. Gas & Elec. Co. v. United States*, 838 F.3d 1341, 1357 (Fed. Cir. 2016), *cert. dismissed*, 17-57, 2018 WL 2989106 (U.S. June 14, 2018) ("We have held that equitable subrogation is a narrow exception to the traditional privity requirement, and we have only found equitable subrogation in the surety context.") (citing *Ins. Co. of the W. v. United States*, 243 F.3d 1367, 1370 (Fed. Cir. 2001); *Admiralty Constr., Inc. v. Dalton*, 156 F.3d 1217, 1222 (Fed. Cir. 1998)); *Nova Cas. Co. v. United States*, 72 Fed. Cl. 755, 759 (2006) ("If a surety to a bonded contract with the government is unable to establish a valid claim against the government based on privity of contract, the surety may invoke the doctrine of equitable subrogation.") (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 136–37 & n. 12 (1962)); *Nat'l Am. Ins. Co. v. United States*, 498 F.3d 1301, 1304 (Fed. Cir. 2007) ("In 1896, the Supreme Court held that a surety could apply the doctrine of equitable subrogation in seeking retained funds from the government for completing performance of a government contract under a performance bond." *Prairie State Nat'l Bank v. United States*, 164 U.S. 227, 240 (1896). The Court extended its holding to a payment bond surety in *Henningsen v. United States Fidelity & Guaranty Co.*, 208 U.S. 404, 411 (1908); *Friendswood Indep. Sch. Dist. v. Nat'l Sur. Corp.*, 423 S.W.2d 95, 100 (Tex. Civ. App.— Houston [14th Dist.] 1967), *rev'd on other grounds by*, 433 S.W.2d 690 (Tex. 1968) (holding surety acquired a valid claim against school district for payment bond losses when school district made unauthorized payment to contractor of a substantial portion of the retainage in violation of terms of the contract); *Nobel Ins. Co. v. City of New York*, 2008 WL 4185738, at *4 (S.D.N.Y. Sept. 3, 2008) ("'The right of subrogation . . . does not depend upon privity, nor is it confined to cases of strict suretyship.'") (quoting *Catskill*

bring a breach of contract claim against another party to the contract, suretyship in public projects is an exception. The simple fact is that there is an entire body of law addressing the rights and remedies available in surety bond disputes that controls the outcome of this dispute, contrary to HCISD's position that the contract in question should be interpreted by standard contract law. *Id.* Because these circumstances fall within the general scope of surety bond contract disputes, the Court holds that Plaintiff Travelers has standing to bring this action despite its lack of direct privity of contract with HCISD through the Contract.

### ii. Defendant HCISD had a contractual duty to release retainages *only* when authorized by the surety.

An important question must be addressed first – was HCISD authorized to release retainages upon request from the contractor. It is undisputed that HCISD released $1,238,493.00 in retainages to Contractor Descon on January 31, 2014. (Dkt. No. 54, Exs. A-4, A-5). What remains in dispute is whether the contractual language granted *permission* to HCISD to release retainages in its *discretion*, upon meeting certain criteria; or whether the contractual provisions granted *no discretion*, and only authorized and obligated HCISD to release retainages with Travelers' written consent.

The relevant provisions of the Contract are produced here for ease of reading.

§ 9.8.5
> The Certificate of Substantial Completion shall be submitted to the Owner and Contractor for their written acceptance of responsibilities assigned to them in such Certificate. Upon such acceptance and consent of surety, if any, the Owner shall make payment of retainage applying such Work or designated portion thereof. Such payment shall be adjusted for Work that is complete or not in accordance with the requirements of the Contract Documents.

§ 9.10.3
> If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of

---

*Nat'l Bank v. Dumary*, 206 N.Y. 100 N.E. 422).

> Change Orders affecting final completion, and the Architect so confirms, the Owner shall, upon application by the Contractor and certification by the Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

Defendant HCISD argues that the obligation to release retainages is permissive because the duty to obtain the written consent of the surety rested on Descon, and so their reliance on the Certificate of Substantial Completion was justified. *See* (Dkt. No. 54). This interpretation is wholly inconsistent with a natural reading of the Contract in its entirety for two reasons.[3] The first reason is that, while the language of the Contract indicates that it was Descon's duty to *request* written consent, the Contract does not explicitly permit HCISD to release retainages upon receipt of the Certificate of Substantial Completion. In fact, section 9.8.5 predicates any release of retainages on the condition of the consent of the surety.[4]

Section 9.10.3 is not inconsistent – it reads that retainages shall be released only when the following conditions are met: (1) Substantial Completion of the Work; (2) final completion of the work not materially delayed by the Contractor with Architect's confirmation as such; (3) application by Contractor; (4) certification by Architect; and (5) any release of retainages would not terminate the Contract. However, a second circumstance envisioned by the Contract is also at play. It permits the release of retainages when: (1) the remaining balance of the Work not

---

[3] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (stating that a court's primary concern is to ascertain the true intentions of the parties by "examin[ing] and consider[ing] the entire writing in an effort to harmonize ve effect to all the provisions of the contract so that none will be rendered meaningless.").

[4] "**Upon such acceptance and consent of surety**, if any, the Owner **shall make payment of retainage** applying such Work or designated portion thereof." Contract § 9.8.5.

completed is less than the retainage stipulated in the Contract; (2) the Contract is bonded; and (3) the written consent of the surety is "provided by the Contractor to the Architect prior to the certification of such payment." *Id.*

When the two relevant provisions are read together, the only fair reconciliation of the rights and duties requires consent of the surety to authorize a partial release of retainages. The Court agrees with Travelers that, "[w]hether the Contract requires HCISD to obtain 'consent of surety' or requires the Contractor to provide 'consent of surety' to HCISD is a distinction without a legal difference." (Dkt. No. 62, p. 4). The Architect, who acts as the owner's agent for purposes of determining when Substantial Completion has been achieved, also acts as the owner's agent when in possession of the surety's written consent before certifying payment. (Dkt. No. 48, p. 5) (quoting *Hartford Fire Ins. Co. v. City of Mont Belvieu*, 611 F.3d 289, 294 (5th Cir. 2010).[5]

The second reason that HCISD's reading of its contractual duties is incorrect is derived from the body of law that it failed to address in its briefing. A public entity-obligee may be found liable for a surety's losses on a payment bond where the public entity fails to hold retainage as provided for under the bonded contract. *Nat'l Sur. Corp. v. Friendswood Indep. Sch. Dist.*, 433 S.W. 2d 690 (Tex. 1968). "The duty devolves upon the [project owner] to administer the contract, during the course of its performance, in a way that does not materially increase the risk that was assumed by the surety when the contract was bonded." *Nat'l Sur. Corp. v. United States*, 118 F.3d 1542, 1547 (Fed. Cir. 1997). This is because, in contracts for services that include payment in installments or upon completion, unearned progress payments and retainage are security, or collateral, ensuring discharge of the obligations created by the underlying

---

[5] "The Fifth Circuit further held that '[i]t is well settled that a surety on a performance bond is entitled to rely on the Architect's Certificate of Completion as the final discharge of its duty on the bond because the Architect is the agent and representative of the owner.'"

contract. *Pa. Nat'l Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945, 953 (8th Cir. 2004) (citing RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 31 cmt. A (AM. LAW. INST. 1996)).

"That a stipulation in a building contract for the retention, until the completion of the work, of a certain portion of the consideration, is as much for the indemnity of him who may be guarantor of the performance of the work, as for him for whom the work is to be performed, that it raises an equity in the surety in the fund to be created, and that a disregard of such stipulation by the voluntary act of the creditor operates to release the sureties, is amply sustained by authority." *Prairie State Nat'l Bank v. United States*, 165 U.S. 227, 233 (1896). When an obligee releases these payments prematurely, the obligee increases the surety's risk under the contract and impairs the surety's ability to be made whole through subrogation if the surety is later called upon to discharge the underlying obligation. *Id.* "In the event of overpayment to a bonded contractor, the surety may contend that its risks have increased without its knowledge because the balance to complete is less than it otherwise would have been." Joe F. Canterbury, Jr. & Robert J. Shapiro, *Texas Construction Law Manual* § 8.27 (3d ed. 2017) (citing *Wald v. Eagle Indem. Co.*, 178 F.2d 91, 94 (5th Cir. 1949)).

The Fifth Circuit has directed this Court to protect the surety where: (a) an owner-obligee prematurely released a portion of the retainages to a bonded contractor without the consent of the surety; and (b) the Architect, an agent of the owner-obligee for purposes of the substantial completion determination, as well as the subsequent certification of payment, issued a Certificate of Substantial Completion without having received any written consent of the surety. As is the case here. Any other reading of the Contract would leave the surety agreement without teeth. When a bonded contract gives no discretion to the project owner to depart from the requirements

governing retainage, the owner is liable to the surety for release in contravention of the terms of the bonded contract. *Friendswood Indep. Sch. Dist. v. Nat'l Sur. Corp.*, 423 S.W.2d 95, 100 (Tex. App.—Houston [14th Dist.], 1967) *rev'd on other grounds by* 433 S.W.2d 690 (Tex. 1968). The Court agrees and therefore holds that HCISD's release of retainages was not authorized or otherwise permitted by the Contract.

### iii. Defendant HCISD materially breached this contractual duty by releasing retainages without Plaintiff Travelers' written consent.

A material breach of a contract is generally defined as the non-performance of a duty that is so material as to justify the injured party in regarding the whole transaction to be at an end. Restatement (Second) of Contracts § 241 (1981). A material breach discharges the non-breaching party from its duties under the contract. *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.* 134 S.W.3d 195, 196 (Tex. 2004). Circumstances to consider in the determination of materiality are:

(1) The extent to which the non-breaching party will be deprived of the benefit it reasonably expected;

(2) The extent to which the non-breaching party can be adequately compensated for the benefit it will be deprived;

(3) The extent to which the breaching party will suffer forfeiture;

(4) The likelihood that the breaching party will cure its breach; and

(5) The extent to which the breaching party has acted in good faith.

*Id.* at 198. Furthermore, an owner that breaches a contract may not demand performance of the procedural requirements of the contract. *Jensen Const. Co. v. Dallas Cnty.*, 920 S.W.2d 761, 771 (Tex. App.—Dallas 1996), *writ denied*.

As discussed above, in contracts for services that include payment in installments or upon completion, unearned progress payments and retainage are security, or collateral, ensuring discharge of the obligations created by the underlying contract. *Pa. Nat'l Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945, 953 (8th Cir. 2004) (citing RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 31 cmt. A (AM. LAW. INST. 1996)). When an obligee releases these payments prematurely, the obligee increases the surety's risk under the contract and impairs the surety's ability to be made whole through subrogation if the surety is later called upon to discharge the underlying obligation. *Id.*

The Court finds that HCISD's breach is decidedly material as it deprives Travelers of the reasonably expected benefit of security in the retainages. The Texas Supreme Court has repeatedly upheld the practice of finding a breaching party liable for the surety's losses on a payment bond in these circumstances.[6] The Court therefore holds that HCISD's breach was material and that it be found liable for Travelers' losses incurred on the payment bond.

### B. Sovereign Immunity

This Court does not agree with Defendant HCISD that it retains governmental immunity. Under section 271.152 of the Texas Local Government Code, HCISD waived its immunity simply by entering into its contract with Descon, the general contractor. TEX. LOC. GOV'T CODE § 271.152 (West 2005). As Travelers correctly points out, the only Texas authority that HCISD cited on this issue supports the opposite position. (Dkt. No. 62, p. 6).

In *Harris County*, a surety asserted a claim for equitable subrogation based on the public owner-obligee's breach of contract, which the court found as a matter of law was not barred by governmental immunity. *Harris Cty. Flood Control Dist. v. Great Am. Ins. Co.*, 359 S.W.3d 736

---

[6] A public entity-obligee may be found liable for a surety's losses on a payment bond where the public entity fails to hold retainage as provided for under the bonded contract. *Nat'l Sur. Corp. v. Friendswood Indep. Sch. Dist.*, 433 S.W. 2d 690 (Tex. 1968).

(Tex. App.—Houston [14th Dist.] 2011). The court found that the immunity waiver codified under sections 271.151 and 271.152 applied to the surety's claims against the county flood district. *Id.* at 746 (citing TEX. LOC. GOV'T CODE §§ 271.151, 271.152).

Defendant HCISD rests on the portion of *Harris County* that states that obligee would be immune if any of the surety's claims sound in tort. *Harris County*, 359 S.W.3d at 746. "Because the former is based upon the District's alleged breach of the Handex Contract, this claim falls within the waiver of governmental immunity contained in section 271.152. *Id.* (citing TEX. LOC. GOV'T CODE §§ 271.151, 271.152). Such is the case the case here. The surety's claim arises from an alleged breach of contract, and so this Court holds that Defendant HCISD has waived its governmental immunity in this context.

### C. Reconciliation with Previous Inconsistent Order

The Court recognizes that the reasoning of this Order is inconsistent with the reasoning given to deny Plaintiff's Motion for Summary Judgment as to Counts One and Two of Plaintiff's First Amended Complaint. (Dkt. No. 48). The earlier Order found that section 9.8.5 of the Contract did not require HCISD to obtain consent of the surety before releasing retainages because Travelers was not a party to the Contract. *Id.* Upon further deliberation and analysis, the Court no longer maintains this opinion and hereby vacates its finding that HCISD's partial release of retainages does not entitle Travelers to reimbursement for funds paid out under the payment bond.

### IV. CONCLUSION

Following a thorough review of the pleadings, the facts, and the law, the Court hereby **ORDERS** that Plaintiff's Motion for Summary Judgment as to Count Three of its First Amended Complaint (Dkt. No. 56) is **GRANTED**. The Court further **ORDERS** that Defendant's Motion

for Summary Judgment as to Count Three of Plaintiff's First Amended Complaint (Dkt. No. 54) is **DENIED**. The Court further **ORDERS** that the Court's finding that HCISD's partial release of retainages does not entitle Travelers to reimbursement for funds paid out under the payment bond, as held in an earlier Order of the Court (Dkt. No. 48), is hereby **VACATED**. The remainder of that Order remains undisturbed.

    SO ORDERED this 2nd day of November, 2018, at McAllen, Texas.

_____
Randy Crane
United States District Judge